NORTHCUTT, Judge.
 

 A jury found Charles Peterson guilty of robbing a retail store. We reverse because the trial court erroneously excluded evidence bearing on the bias or motive of a key State witness and rejected a special jury instruction applicable to Peterson’s theory of defense.
 

 Both errors related to the use of force that is a necessary element of the crime of robbery. A larcenous taking of property constitutes a robbery if “in the course of the taking” there is a use of force, violence, assault or putting in fear. § 812.13(1), Fla. Stat. (2008). An act is “ ‘in the course of the taking’ if it occurs either prior to, contemporaneous with, or subsequent to the taking of the property” and “it and the act of taking constitute a continuous series of acts or events.” § 812.13(S)(b).
 

 Peterson’s defense focused on the last-mentioned aspect of the charge. His theory was that he had abandoned the stolen property before he used force to escape the scene. In such circumstances, Florida’s courts have held that the act of taking and the use of force were not a continuous series of acts or events for purposes of the robbery statute.
 
 See State v. Baker,
 
 540 So.2d 847 (Fla. 3d DCA 1989) (affirming dismissal of robbery charge when evidence showed that defendant took property without use of force, abandoned property, and then used force to leave; under such circumstances, use of force was not “part of ‘a continuous series of acts or events’ involved with taking of property”) (quoting in part § 812.13(3)(b));
 
 see also Garcia v. State,
 
 614 So.2d 568 (Fla. 2d DCA 1993) (relying on
 
 Baker
 
 to reverse robbery conviction under similar circumstances where use of force followed abandonment of property). Under Peterson’s theory, he was guilty only of the misdemeanor offense of resisting a merchant.
 
 See
 
 § 812.015(6).
 

 Both the State’s case and Peterson’s theory of defense in large part hinged on the testimony of the State’s chief witness at trial, Theodora Green. Green recounted that on the day of the incident she was working her shift as a sales clerk at a Dollar General store. She observed Peterson in the socks and underwear aisle putting merchandise in the waistband of his pants. Green called the police and secured the front door to keep Peterson in the store. She was assisted by the store manager, who happened to arrive during the episode. Apprised of the situation, the manager endeavored to hold the door closed from the outside. Peterson approached the exit, left his shopping basket, and forced his way out of the store by pushing Green aside. Peterson was able to escape in a car that pulled up in front of the store.
 

 Green’s testimony was pivotal because she was the only witness who contradicted Peterson’s theory that he had transferred
 
 *689
 
 the stolen merchandise to the shopping basket that he abandoned before shoving his way out of the store. She testified that some bystanders briefly grabbed Peterson’s shirt as he fled, and she glimpsed merchandise still packed around his waist. After police officers responded to the scene, the store manager showed them a videotape of the incident captured by the store’s surveillance system. The videotape was not preserved, but the manager and the officers testified that it showed Peterson taking merchandise off the shelf and concealing it under his clothing. Peterson’s abandoned shopping basket also contained merchandise. The witnesses were unable to discern from the videotape whether the items in the basket were the same ones that they saw Peterson take from the shelves.
 

 On appeal, Peterson complains that the trial court abused its discretion by excluding evidence about the reason Green no longer worked at the Dollar General store and about her desire to regain her job. In a proffer, the defense established that Green left because she was suspected of stealing from the store and that she still wished to work there. Defense counsel argued that this evidence was relevant to show her bias and motive to testify favorably for her former employer. The court allowed the defense to establish simply that Green no longer worked at the store. It prohibited any other questions on that topic.
 

 It has long been established that evidence of a witness’s interest, motives, animus, or status in relation to the proceeding is not collateral or immaterial.
 
 Bryan v. State,
 
 41 Fla. 643, 26 So. 1022, 1028 (1899). Although a trial court has discretion regarding the admission of evidence, that discretion is limited by the rules of evidence.
 
 Michael v. State,
 
 884 So.2d 83, 84 (Fla. 2d DCA 2004). Those rules provide that the credibility of a witness may be attacked by showing that the witness is biased. § 90.608(2), Fla. Stat. (2008). A criminal defendant has the right to show a witness’s possible ulterior motive for testimony,
 
 Michael,
 
 884 So.2d at 84, and he or she should be afforded wide latitude in questioning a witness about her bias or motive for testifying,
 
 Lloyd v. State,
 
 909 So.2d 580 (Fla. 2d DCA 2005).
 

 In Peterson’s case the trial court abused its discretion in preventing the defense from showing that Green had a motive to testify as she did, that being to curry favor in an attempt either to regain her job or to improve her former employer’s recommendation for future employment. Because Green was the only witness who testified that Peterson had the .merchandise with him when he left the store, we cannot say that this error was harmless.
 
 See State v. DiGuilio,
 
 491 So.2d 1129 (Fla.1986). Accordingly, we must reverse on this issue.
 

 Peterson also challenges the trial court’s determination to give only the standard jury instruction on robbery. The court rejected Peterson’s request that it also instruct the jury that “[i]f it is established that the property was abandoned prior to the use of force then you must find the Defendant not guilty of a robbery.”
 

 A defendant who requests a special jury instruction must demonstrate that (1) the special instruction is supported by the evidence; (2) the standard instruction does not adequately cover the theory of defense; and (3) the special instruction is a correct statement of the law and not misleading or confusing.
 
 Stephens v. State,
 
 787 So.2d 747, 756 (Fla.2001). Taking these elements in reverse order, it is clear that Peterson’s proposed addition to the robbery instruction was a correct state
 
 *690
 
 ment of the law.
 
 See Garcia; Baker.
 
 Moreover, the State did not argue, and the court did not find, that the special instruction would have been misleading or confusing. Nor do we see it as such.
 

 We also conclude that the standard instruction did not adequately cover Peterson’s theory of defense. The standard instruction required the jury to find that force was used “in the course of the taking,” which was then defined as “prior to, contemporaneous with, or subsequent to” the taking and that the use of force and the taking of the property “constitute[d] a continuous series of acts or events.” Fla. Std. Jury Instr. (Crim.) 15.1. The standard instruction did not inform the jury that if the property was abandoned prior to the use of force, under the law the taking and the use of force were not a continuous series or acts or events. As such, the instruction did not cover Peterson’s theory of defense.
 

 We recognize that standard jury instructions are presumed correct and are preferred over special instructions.
 
 See Stephens,
 
 787 So.2d at 755. However, the use of standard jury instructions does not relieve the trial court of its obligation to determine whether the standard instructions accurately and adequately state the law applicable to a given case.
 
 Brown v. State,
 
 11 So.3d 428, 432 (Fla. 2d DCA 2009). Indeed, the discretion of a trial court in such matters has been characterized as “fairly narrow” because a defendant is entitled to have the jury instructed on his theory of defense if any evidence supports that theory, so long as the theory is valid under Florida law.
 
 Chavers v. State,
 
 901 So.2d 409, 410 (Fla. 1st DCA 2005) (quoting in part
 
 Goode v. State,
 
 856 So.2d 1101, 1104 (Fla. 1st DCA 2003)).
 

 This brings us to the final criterion— whether Peterson’s proposed special instruction was supported by the evidence. The store manager and the responding police officers testified that they could not say whether Peterson left the store with merchandise. They acknowledged that he had left items in the abandoned shopping basket that were consistent with the items they observed him taking from the shelves when they reviewed the surveillance tape. Green was the only witness to testify on this point, and her credibility was subject to impeachment. The defense would have been able to argue that the jury should consider her bias and motive when weighing her testimony. Thus, the defense presented a version of the evidence that warranted the special instruction. The trial court abused its discretion when refusing to give this instruction, and we must reverse on this issue as well.
 

 Reversed and remanded for new trial.
 

 FULMER and VILLANTI, JJ., Concur.