CORTINAS, J.
 

 Gerzon Ferrales (the “Victim”) was unloading luggage after arriving from Tampa with his wife, his mother, and his mother’s husband when he was approached by the defendant, Gregory Thomas (“Thomas”). Thomas approached the Victim and his family under the pretext of selling them a CD player. When they declined to purchase, Thomas snatched a purse from the shoulder of the Victim’s mother. In addition to personal items belonging to the Victim’s mother, the purse also contained $460 that the Victim had given to his mother. Thomas attempted to flee the scene in a getaway car driven by another individual. The Victim attempted to prevent the taking by grabbing on to the passenger side door of the vehicle as it took off.
 

 As the vehicle sped away, Thomas forcibly attempted to knock the Victim from the side of the car. At one point, the driver stopped and apparently exited the car, but he quickly re-entered and resumed driving after he noticed approaching witnesses. Throughout these events, the Victim continued to resist the taking by holding on to the car door. After several minutes, the car arrived at a padlocked gate at the Opa-locka airport. The car slowed down, then sped through the gate and at least one more fence at the airport. The force of these impacts peeled the Victim off the car door. The Victim suffered several broken bones, lacerations, and bruises and died later at the hospital as a result of blunt force trauma to the head and neck. The car was found abandoned not far from the airport, along with the purse.
 

 
 *855
 
 Thomas was tried on charges of first degree felony murder, robbery by sudden snatching, and grand theft auto.
 
 [1]
 
 At trial, Thomas moved for a judgment of acquittal on the count of first degree felony murder after the State rested. Thomas argued that there was insufficient evidence to establish the predicate felony of robbery. The motion was denied, and the jury ultimately found Thomas guilty of first degree felony murder, robbery by snatching, and grand theft auto. Thomas appeals the denial of his motion for acquittal.
 

 We review the denial of the motion for judgment of acquittal de novo.
 
 Troy v. State,
 
 948 So.2d 635, 645-46 (2007);
 
 Johnston v. State,
 
 863 So.2d 271, 283-84 (Fla.2003);
 
 Pagan v. State,
 
 830 So.2d 792, 803 (Fla.2002). Generally, a conviction supported by substantial competent evidence will not be reversed by an appellate court.
 
 See Pagan,
 
 830 So.2d at 803. Sufficient competent evidence exists to sustain a conviction “[i]f, after viewing the evidence in the light most favorable to the State, a rational trier of fact could find the existence of the elements of the crime beyond a reasonable doubt....”
 
 Id.
 

 The elements of the crime of robbery are set forth in section 812.13, Florida Statutes. Prior to 1987, Florida law “interpreted section 812.13 as being consistent with the common law ... [and required that] ‘[t]he violence or intimidation [associated with robbery] must precede or be contemporaneous with the taking of the property.’ ”
 
 Royal v. State,
 
 490 So.2d 44, 46 (Fla.1986) (quoting
 
 Montsdoca v. State,
 
 84 Fla. 82, 93 So. 157, 159 (1922)). Before being amended by the legislature, section 812.13 defined “robbery” as follows:
 

 (1) “Robbery” means the taking of money or other property which may be the subject of larceny from the person or custody of another by force, violence, assault, or putting in fear.
 

 Effective October 1, 1987, however, the robbery statute was amended by the inclusion of the phrase “when in the course of the taking” in subsection 812.13(1) and the addition of section 812.13(3)(b).
 
 See
 
 Ch. 87-315, ■§ 1, Laws of Fla.; §§ 812.13(1), (3)(b), Florida Statutes (1987).
 
 [2]
 

 The version of the statute applicable to this case, inclusive of the 1987 amendment, reads as follows:
 

 (1) “Robbery” means the taking of money or other property which may be the subject of larceny from the person or custody of another, with intent to either permanently or temporarily deprive the person or the owner of the money or other property, when in the course of the taking there is the use of force, violence, assault, or putting in fear.
 

 [[Image here]]
 

 (3)(a) An act shall be deemed “in the course of committing the robbery” if it occurs in an attempt to commit robbery or in flight after the attempt or commission.
 

 (b) An act shall be deemed “in the course of the taking” if it occurs either prior to, contemporaneous with, or subsequent to the taking of the property and if it and the act of taking constitute a continuous series of acts or events.
 

 § 812.13, Fla. Stat. (2004) (emphasis added). By amending the statute, the legislature essentially expanded the definition of
 
 *856
 
 robbery to include acts occurring after the taking, provided that such acts and the taking are part of a “continuous series of acts or events.” Following the 1987 amendment, the “force, violence, assault, or putting in fear” no longer has to be exerted against the person from whom the property was taken, so long as it was exerted in the course of the taking.
 
 See Santilli v. State,
 
 570 So.2d 400, 402 (Fla. 5th DCA 1990) (“[T]he continuity of [the shoplifter’s] progression from the store to his forceful act against the [pursuing] officer with his car outside the store justified submission of the robbery offense to the jury.”);
 
 Rumph v. State,
 
 544 So.2d 1150, 1151-52 (Fla. 5th DCA 1989) (“[A shoplifter’s] use of force to shove [a store employee] out of his way and into the door as he fled with [stolen property] constitutes the use of force in flight after the taking and provides the evidence to sustain [the shoplifter’s] conviction for robbery.”)
 

 In order to prove robbery in the case before us, the State was required to demonstrate that there was a “taking of money or other property ... from the person or custody of another” and that “in the course of the taking, there [was] the use of force, violence, assault, or putting in fear.” See § 812.13, Fla. Stat. (2004). These statutory requirements were satisfied because 1) there was a taking of money from the person of the Victim’s mother; 2) there was a use of force, violence, assault, or putting in fear by both Thomas and the driver against the Victim; 3) the exertion of such use of force was subsequent to the taking, while the victim was attempting to retrieve the stolen money;
 
 [3]
 
 and 4) the taking and the use of force while fleeing the crime scene comprised a continuous series of acts, rendering the use of force “in the course of the taking.”
 
 See id.; Santilli,
 
 570 So.2d at 401-02. We further clarify that there need not be any legal relationship (i.e., mother-son or employer-employee) between the person from whom the property is taken and the person against whom the force, violence, assault, or putting in fear is exerted, provided that the taking and the use of force comprise a continuous series of acts or events.
 
 See Santilli,
 
 570 So.2d 400;
 
 Rumph,
 
 544 So.2d 1150.
 

 Thomas’ reliance upon
 
 Gaiter v. State,
 
 824 So.2d 956 (Fla. 3d DCA 2002), is misplaced.
 
 Gaiter
 
 is entirely distinguishable from the case before us as it involved a landlord who confronted a would-be thief attempting to steal, from the landlord’s premises, a bicycle belonging to the landlord’s tenant. Unlike the instant case, no evidence was presented in
 
 Gaiter
 
 to demonstrate that anything was taken from the person of another or that the landlord had custody of the bicycle when it was taken. Thomas places particular reliance on the statement in
 
 Gaiter
 
 that “[o]ne of the essential elements of robbery is that the person who is placed in fear or assaulted must either own or have custody of the property being taken.”
 
 Id.
 
 at 957. When read in context, it is evident that this statement is dicta, and we are neither bound nor persuaded by it.
 

 Based upon the foregoing, there is substantial competent evidence to support the conviction of felony murder and the finding of the elements of the predicate felony of robbery by the jury. Accordingly, we affirm.
 

 Affirmed.
 

 [1]
 

 . During his interview after he was taken into custody, Thomas admitted that he had stolen the getaway car a short time before the incident involving the Victim, but he also stated that the car was later stolen from him by someone else. Thomas maintained that he was not involved in the incident that caused the Victim’s death.
 

 [2]
 

 . Section 812.13 was again later amended in 1992. However, the 1992 amendment is not pertinent to our analysis.
 

 [3]
 

 . Witness testimony demonstrates that Thomas forcibly attempted to remove the Victim from the car door as the car sped away.