TORPY, J.
Appellant challenges his conviction for robbery with a firearm, asserting that the trial court should have granted his motion for judgment of acquittal because he “abandoned” the stolen merchandise before he threatened a pursuing store employee with a firearm. Appellant also challenges the trial court’s modifications to his proffered special jury instruction. We affirm.
The robbery conviction arose from Appellant’s theft of clothing from a Wal-Mart store. A store employee confronted Appellant as he attempted to exit the store. Appellant fled with the merchandise, and the store employee pursued him. During the pursuit, the store employee grabbed Appellant’s jacket, causing him to drop some or all of the merchandise. The employee continued to pursue Appellant until Appellant reached his get-away car. Before entering the car, Appellant displayed a firearm that had been concealed in his waistband and warned the employee to stop the pursuit. At that point, the employee retreated, and Appellant escaped.
Appellant was apprehended by police and charged with robbery. He admitted stealing the merchandise, but denied that he had committed robbery because he claimed that he had not possessed a fire *960 arm. He asserted as an alternative defense to the robbery charge that even if he had displayed a firearm, he had abandoned the merchandise before the display. He argued that this defense entitled him to a judgment of acquittal or, at the very least, a jury instruction that he should be found not guilty if he “abandoned” the stolen property before he threatened force. We conclude that this case was a proper one for the jury to determine whether the threatened violence was used “in the course of taking,” as defined in the robbery statute. We also conclude that Appellant was not entitled to his proffered special instruction because it was an incorrect statement of the law, confusing, and was already covered in the standard instruction. One of the court’s modifications to the special instruction was not erroneous. The other was invited error and harmless error nevertheless.
We start our analysis with Royal v. State, 490 So.2d 44 (Fla.1986), because Royal sparked a statutory amendment to the robbery statute. See Rumph v. State, 544 So.2d 1150 (Fla. 5th DCA 1989) (intent of amendment to “supersede” Royal); State v. Baker, 540 So.2d 847 (Fla. 3d DCA 1989) (legislative intent in amending section 812.13 was to “repeal” rule in Royal). In Royal, when the defendants were confronted by a store detective, they pushed him, fled from the store, and attempted to escape in a vehicle with the detective and other store employees in hot pursuit. 490 So.2d at 45. After an employee attempted to grab the ignition key to prevent the defendants from escaping, one of the defendants punched him. Then, the other defendant pointed a gun at the employees, causing them to retreat. Our high court held that the defendants could not be convicted of robbery because the acts of pushing the detective, punching an employee, and displaying the firearm in a threatening manner did not constitute a taking “by force,” because the violence occurred “after the taking.” Id. at 45-46 (emphasis added).
In response to Royal, in 1987 the Legislature amended section 812.13(1), Florida Statutes, to change the definition of robbery from a taking by force (or threat) to a taking where force (or threatened force) was used “in the course of the taking.” Ch. 87-315, § 1, at 2052, Laws of Fla. (emphasis added). The amendment added a definition for the phrase “in the course of the taking,” to include acts that are either “prior to, contemporaneous with, or subsequent to the taking,” provided that the acts and the taking “constitute a continuous series of acts or events.” § 812.13(3)(b), Fla. Stat. (1987). The statute retained a definition of “in the course of committing the robbery” for purposes of applying statutory enhancements. § 812.13(3)(a), Fla. Stat. (1987). The revised statute provides in material part as follows:
(1) “Robbery” means the taking of money or other property which may be the subject of larceny from the person or custody of another, with intent to either permanently or temporarily deprive the person or the owner of the money or other property, when in the course of the taking there is the use of force, violence, assault, or putting in fear.
[[Image here]]
(3)(a) An act shall be deemed “in the course of committing the robbery” if it occurs in an attempt to commit robbery or in flight after the attempt or commission.
(b) An act shall be deemed “in the course of the taking” if it occurs either prior to, contemporaneous with, or subsequent to the taking of the property *961 and if it and the act of taking constitute a continuous series of acts or events.
§ 812.18(1), (3), Fla. Stat. (1987).
The intent of this change was to expand the common law crime of robbery to include, among other circumstances, where the force is used after the taking, provided it is used during a “continuous series of acts or events.”[1] Clearly, in a case like Royal, the Legislature intended the use of force or threatened force during flight to fall within the statutory definition of robbery. Messina v. State, 728 So.2d 818 (Fla. 1st DCA 1999), is analogous to Royal. There, the victim chased the defendant thief through a parking lot and sat on the hood of his car to prevent his escape with her stolen purse. The defendant started and stopped his car abruptly and then made a sharp turn, causing the victim to fall off the car and suffer injuries. Id. at 818. Our sister court concluded that the use of force presented a jury question as to whether it was part of a continuous event under the robbery statute. Id. at 819-20; see Thomas v. State, 36 So.3d 853 (Fla. 3d DCA 2010) (attempt to knock victim off car used to escape was within continuous series of events). In Royal, Messina, and Thomas, the thieves retained possession of the stolen merchandise throughout the subsequent pursuit, arguably a fact that distinguishes this case.
On the other side of the coin are cases like Baker, 540 So.2d 847, and Simmons v. State, 551 So.2d 607 (Fla. 5th DCA 1989), wherein the courts held, as a matter of law, that the chain of events was broken by “abandonment” of the stolen property, precluding robbery convictions. In Baker, upon seeing store security personnel approaching, the defendant put down the stolen video recorder inside the shopping mall and began to flee. 540 So.2d at 848. During the ensuing chase, he used force to evade capture. In affirming the dismissal of the robbery charge, our sister court concluded that, because the defendant did not use force as part of a “‘continuous series of acts or events’ involved with taking the property,” the charge was properly dismissed. Id. (emphasis added). In dicta, however, the Baker court stated that “[t]he defendant would have to have been in continuous possession of the property during the escape and the subsequent flight or resisting of arrest in order for the act to fall within the amended statute.” Id.
Similarly, our Court in Simmons addressed a situation where the defendant discarded the merchandise before using force to resist capture. 551 So.2d at 608. There, store employees confronted the defendant outside a department store after observing her remove merchandise without paying for it. They escorted her back inside the store, where she removed the merchandise and threw it to the floor. When the employees instructed her to accompany them to the security office, the defendant forcibly resisted. This Court, citing Baker, reversed the robbery conviction because “the property [had been] abandoned before any force was employed.” Id.
Appellant urges that this case is like Baker and Simmons, and unlike Royal and its progeny, because he dropped the merchandise before he made the alleged threat. Even assuming for the sake of discussion that dropping merchandise when grabbed by a pursuing merchant is *962 the same as “abandonment” — as that term was intended in Baker and Simmons,[2] and assuming that the Baker dicta was a correct pronouncement of the law — a factual dispute at trial precluded a judgment of acquittal here. Although Appellant testified that he had discarded all of the stolen merchandise before he allegedly brandished the firearm, the employee testified that he had not.
Our conclusion that a factual issue was presented does not end our labor, however, because Appellant argues in the alternative that he was entitled to a special instruction consistent with his version of the facts and urges that his proffered instruction was a correct statement of the law under Baker and Simmons and should not have been modified by the trial court. Appellant’s argument and proposed jury charge presents the question of whether the “abandonment” of stolen goods by a thief who is being pursued is a sufficient break in the “continuous series of events” such that a robbery conviction cannot be sustained. Consistent with the dicta in Baker, Appellant contends that Baker and Simmons apply anytime an escaping thief discards or drops the ill-gotten-gains before employing force or threatened force to evade capture by someone in pursuit. We think Baker and Simmons can be distinguished.
Simmons can be distinguished because the defendant there had been apprehended and escorted by employees back inside the store. 551 So.2d at 608. This was an intervening event that interrupted the defendant’s volitional course, thereby negating the continuity requirement of the statute. Baker is also distinguishable. There, the property was discarded in the shopping mall before the ensuing flight began. 540 So.2d at 848. Arguably, the “taking” ended before the next act of flight began. Thus, the series of acts was not continuous because the defendant ceased the crime of theft before he began the flight. The dicta in Baker — that a fleeing thief must be in continuous possession of the stolen item(s) until the point of violence to constitute robbery — was unnecessary to the holding and in contravention of the plain language of the statute. Under this construction, if a fleeing thief drops the merchandise to retrieve a gun and shoot the pursuer, it is *963 not robbery. We specifically reject the Baker dicta because it is repugnant with the plain and unambiguous language of the statute and legislative history outlining the reason for the statutory amendment.
Under the statutory definition of “in the course of taking,” there is no question that the violent act (or threat) necessary for a robbery conviction may occur subsequent to the taking. The more difficult question is when do the subsequent violent act and the taking “constitute a continuous series of acts or events.” A “series of acts or events” is simply a sequence of related acts or events. See Oxford Dictionaries, series, http://oxford dictionaries.com/definition/series?q=series (last visited Feb. 6, 2012) (defining “series” as “a number of events, objects, or people of similar or related kind coming one after another”). Section 812.18(3) in no way suggests that these sequential acts or events must be in furtherance of an effort to retain the stolen property, or, as the Baker court put it, “involved with taking property.” 540 So.2d at 848. Thus, flight upon detection, for example, is an “act” that is sequential to and related to the act of taking. Discarding the stolen goods would also be such an act. The further qualifier that these series of acts be “continuous” means only that the sequential acts are not interrupted.
Applying this statute to the facts in Royal illustrates what was intended. There the series of related acts were the taking, the push, the flight, the struggle at the car, the punch, the threat with the gun, and the escape by vehicle. 490 So.2d at 45. The possession of merchandise during these acts was not an “act,” any more than wearing a hat while walking is an act distinct from the act of walking. They were continuous acts because they happened one after the other without any significant temporal void. They were all related to the taking because the taking and the flight were part of the same episode. The escape is as much a part of the crime as is the taking itself. Whether the act of violence was motivated by a desire to retain the goods, avoid capture, or both, is of no moment. See Kearse v. State, 662 So.2d 677, 685 (Fla.1995) (robbery conviction proper even if taking and subsequent murder not motivated by desire to steal property but to escape apprehension). The emphasis should be on whether the entire chain of acts is a part of a continuous series of events. That is all the statute requires.
This interpretation is consistent with and bulwarked by other language in the statute and the legislative history for the amendment. The statute defines “in the course of committing the robbery” to expressly include the “flight” after a robbery or attempted robbery. § 812.13(3)(a), Fla. Stat. Although this phrase is tied to the sentencing enhancement aspect of the statute, it nevertheless evinces a legislative recognition that the actions of the thief during the flight are related to, and considered a part of, the underlying crime. Our interpretation is also consistent with a legislative staff analysis of the proposed amendment, which states that the purpose of the amendment is “to expand robbery to include force occurring in an attempt to take money or property, or in flight after the attempt or taking.” See Fla. H.R. Comm, on Robbery, HB 758 (1987) Staff Analysis 1 (final June 26, 1987) (on file with Comm.) (emphasis added).[3] The em *964 phasized language plainly connotes that force during flight constitutes robbery, even after a mere “attempt” to take property.
The State objected to Appellant’s proffered special instruction, arguing that it was already covered in the standard instruction. The trial judge gave the instruction with some modification. To establish entitlement to a special instruction, a defendant must show that: (1) the special instruction was supported by the evidence; (2) the standard instruction did not adequately cover the theory of defense; and (3) the special instruction was a correct statement of the law and not misleading or confusing. Stephens v. State, 787 So.2d 747, 756-57 (Fla.2001). Here, the standard instruction was given. Because it tracks the language of the statute, including the elements of the crime and the pertinent definition, it was appropriate to give the instruction without a supplemental special instruction. State v. White, 891 So.2d 502, 502-03 (Fla.2004); State v. Hubbard, 751 So.2d 552, 558 (Fla.1999); City of Tampa v. Long, 638 So.2d 35, 39 (Fla.1994). It is not necessary that a special instruction be given when the standard instruction provides the legal framework for the attorneys to argue their theory, even when the proposed special instruction more specifically addresses a defense theory based on facts adduced at trial, See San Martin v. State, 705 So.2d 1337, 1349 (Fla.1997) (not necessary to advise jury of specific non-statutory mitigating circumstances; standard, general instruction sufficient).
 More importantly, as we have explained, the proffered special instruction was not a correct statement of the law and was confusing at best. Thus, it was within the trial court’s discretion to deny the special instruction altogether. Instead, here, the trial court made two changes to the proffered instruction. The first change, the addition of the word “voluntary” to qualify “abandonment,” was not an abuse of discretion because “abandonment” contemplates a voluntary act. The other modification, although erroneous, was invited by the submission of an erroneous special instruction[4] and was nonetheless harmless, given the inconsequential change to the proffered instruction and its redundancy with the standard instruction.
We acknowledge conflict with Peterson v. State, 24 So.3d 686, 690 (Fla. 2d DCA 2009). Although Peterson is in the Baker/Simmons category of cases and can be distinguished for the same reasons, we disagree with its conclusion regarding the necessity and propriety of the special instruction regarding “abandonment.”
AFFIRMED.
PALMER and EVANDER, JJ., concur.

. See Fla. H.R. Comm. on Robbery, HB 758 (1987) Staff Analysis 1 (final June 26, 1987) (on file with Comm.) (stating that bill amends section 812.13 to expand robbery to include force occurring in attempt to take money or property, or in flight after an attempt or taking).

. The use of the word "abandonment” in Baker and Simmons was inartful at best and led to the confusion here. "Abandonment” of property typically refers to the voluntary relinquishment of an owner’s right. State v. Kennon, 652 So.2d 396, 398 (Fla. 2d DCA 1995); see Meeks ex rel. Estate of Meeks v. Fla. Power & Light Co., 816 So.2d 1125, 1129 n. 4 (Fla. 5th DCA 2002) (abandonment is relinquishment of owner’s right). A thief cannot abandon property he does not own. The trial court was concerned with the distinction between "voluntary” abandonment and "involuntary” abandonment, a distinction the State argues is legally significant because both the statutory defense of "abandonment,” contained in section 777.04(5), Florida Statutes, and the common law defense of "abandonment” only apply to voluntary abandonment. See Carroll v. State, 680 So.2d 1065 (Fla. 3d DCA 1996) (only voluntary abandonment is a defense to certain crimes). Adding to the confusion, our Court has characterized Simmons as a case where the defendant "voluntarily abandoned” the merchandise. Santilli v. State, 570 So.2d 400 (Fla. 5th DCA 1990). We do not take Baker or Simmons to use the word "abandonment” in the technical sense as either the relinquishment of a right in property or as a defense to a crime based on the abandonment of the crime. Rather, we think these opinions intended "abandon” to mean the relinquishment of possession of the property. Based on the facts of those cases, it does appear that the courts contemplated a purposeful act, rather than an accidental or involuntary act. But whatever was meant by the use of the word "abandonment” in those decisions, the proper focus in all of these cases should not be whether the defendant "abandoned,” "discarded,” or "dropped” the property. The proper focus should be on whether the defendant’s actions were all part of a continuous series of acts or events.

. We remain mindful that history such as this is only a factor in determining intent. See White v. State, 714 So.2d 440, 443 n. 5 (Fla.1998) (recognizing that staff analyses are not determinative of legislative intent, but are only "one touchstone of the collective legislative will” (quoting Sun Bank/South Fla., N.A. *964 v. Baker, 632 So.2d 669, 671 (Fla. 4th DCA 1994))).

. If a proffered instruction misstates the law or is otherwise clearly erroneous, a trial court's modification of it does not constitute reversible error. See Bass v. State, 58 Fla. 1, 50 So. 531, 533 (Fla.1909) (denying claim for relief based on court’s modification of requested special instruction because requested instruction was clearly erroneous); Young v. State, 24 Fla. 147, 3 So. 881, 881 (1888) (stating that modification that essentially changes the force of an instruction is error unless instruction not pertinent).