LABARGA, J.
Dean Kenneth Rockmore seeks review of the Fifth District Court of Appeal’s decision in Rockmore v. State, 114 So.3d 958 (Fla. 5th DCA 2012), on the ground that it expressly and directly conflicts with the Second District Court of Appeal’s decision in Peterson v. State, 24 So.3d 686 (Fla. 2d DCA 2009), on the same question of law. Specifically, the district courts reached conflicting decisions concerning the necessity of a special jury instruction where the defendant’s theory of defense to a robbery charge is that he abandoned the stolen property prior to threatening or using force. We have jurisdiction. See art. V, § 3(b)(3), Fla. Const. For the reasons set forth below, we approve the result of the Fifth District’s decision affirming Rockmore’s conviction.
BACKGROUND
The State charged Rockmore with robbery with a firearm. At trial, it was undisputed that Rockmore stole a package of T-shirts and a package of socks from Wal-mart. It was also undisputed that Wal-mart loss prevention agent Stephen Arnold, who had observed Rockmore conceal the shirts and socks under his clothing and exit the store without paying, chased Rockmore across several parking lots in an attempt to retrieve the stolen property and have Rockmore return to the store with him. However, it was disputed as to whether Rockmore’s actions during the chase elevated the theft to a robbery.
Arnold testified that he never lost sight of Rockmore during the pursuit and that when Rockmore was trying to remove his jacket, Arnold pulled on the jacket at the same time and the stolen shirts came out. When the shirts fell, Arnold testified that Rockmore told him, “There’s your merchandise .... I’m not going to come with you, I’m not.” However, Arnold said that he kept following Rockmore because he knew that Rockmore still had the socks and because he wanted to get Rockmore’s information. Arnold testified that Rock-more eventually reached a parked car with a man and a woman inside. Arnold testified that before Rockmore entered the car, Rockmore turned to face him from five to *981 ten feet away, lifted his shirt, displayed a gun that was tucked into his waistband, and said “Let it go, let it be, you don’t want none.” At that point, Arnold said that he backed off because he was scared, and Rockmore left in the car.
In contrast, Rockmore testified that the socks fell out of his clothing while he was running through the grass, that he took off his jacket because it was hot, and that he threw the package of shirts down. After the shirts fell, Rockmore testified that he told Arnold, “Look, give me a break, man. You got your S back.” Rockmore also testified that he did not have any of the stolen merchandise on him by the time he got to the car. Though Rockmore testified that he could not remember if he said anything else to Arnold before he got into the car, he denied having a weapon, threatening Arnold with a weapon, and committing a robbery. Testimony at trial established that police recovered Rock-more’s jacket and the package of shirts from the scene. However, the socks were never found.
After the State rested, Rockmore moved for a judgment of acquittal. He argued that he had abandoned the stolen merchandise before he allegedly threatened Arnold with a firearm; thus, the use of force was too remote from the taking to support a conviction under the robbery statute, which requires that the taking of property and the use of force constitute a continuous series of acts or events. The trial court denied the motion.
Before the case was submitted to the jury, Rockmore requested that, in addition to the standard robbery jury instruction, the trial court give a special jury instruction on abandonment similar to the instruction the Second District in Peterson approved as a correct statement of law. Specifically, the Second District held that Peterson’s theory of defense to the charge of robbery — that “he had transferred the stolen merchandise to [a] shopping basket that he abandoned before shoving his way out of the store” — and the evidence presented in that case entitled Peterson to the following special jury instruction: “[I]f it is established that the property was abandoned prior to the use of force then you must find the Defendant not guilty of a robbery.” Peterson, 24 So.3d at 688-89.
The trial court in this case gave the requested special instruction but, over Rockmore’s objection, modified it to require that the abandonment be voluntary and that the victim be aware of the abandonment, in order to establish the defense. As modified, the special instruction was given to the jury as follows:
If you find that the defendant took the merchandise without any use of force and had completely and voluntarily abandoned the property before he used any force and the victim was aware of such abandonment, then you should find the defendant not guilty of robbery with a firearm, deadly weapon, or weapon.
(Emphasis added). The jury convicted Rockmore of robbery with a firearm and, because Rockmore was a prison releasee reoffender, the trial court sentenced him to life.[1]
Rockmore appealed his conviction to the Fifth District Court of Appeal, arguing that the trial court erred by denying his motion for judgment of acquittal and by improperly modifying his proffered aban *982 donment instruction. The Fifth District rejected both arguments and affirmed Rockmore’s conviction. Rockmore, 114 So.3d at 959. In so holding, the Fifth District disagreed with the Second District’s decision in Peterson regarding the necessity for a special instruction on abandonment and acknowledged conflict with that decision. See Rockmore, 114 So.3d at 964.
Rockmore raises the same arguments in this Court. To resolve them, it is necessary to explain Florida’s robbery statute and the abandonment of property defense that several of our district courts have held precludes its application.
Florida’s Robbery Statute
Before 1987, Florida followed the common law rule for robbery, which required that the “ ‘force, violence, assault, or putting in fear’ must occur prior to or contemporaneous with the taking of property.” Royal v. State, 490 So.2d 44, 45 (Fla. 1986), superseded, by statute as recognized in Robinson v. State, 692 So.2d 883, 886 n. 9 (Fla.1997). Thus, under the former law, if violence was not used to take property, but was used to flee with the stolen property, there could be no robbery. See Royal, 490 So.2d at 45-46 (holding that shoplifters who pushed a detective, punched an employee, and displayed a firearm in order to escape with stolen property could not be convicted of robbery because the violence occurred after the taking). However, in 1987, the Legislature amended the robbery statute to prevent this result by “expand[ing] robbery to include force occurring in an attempt to take money or property, or in flight after the attempt or taking.” Rockmore, 114 So.3d at 963 (quoting Fla. H.R. Comm, on Robbery, HB 758 (1987) Staff Analysis 1 (final June 26, 1987) (on file with Comm.)).
Under current law, which is the same law that was in effect at the time of Roek-more’s crime, “robbery” is defined as
the- taking of money or other property which may be the subject of larceny from the person or custody of another, with intent to either permanently or temporarily deprive the person or the owner of the money or other property, when in the course of the taking there is the use of force, violence, assault, or putting in fear.
§ 812.13(1), Fla. Stat. (2013). The robbery statute further provides that “[a]n act shall be deemed ‘in the course of the taking’ if it occurs either prior to, contemporaneous with, or subsequent to the taking of the property and if it and the act of taking constitute a continuous series of acts or events.” § 812.13(3)(b), Fla. Stat. (2013). Under the robbery statute, “[a]n act shall be deemed ‘in the course of committing the robbery’ if it occurs in an attempt to commit robbery or in flight after the attempt or commission.” § 812.13(3)(a), Fla. Stat. (2013). In addition, the punishment for robbery is enhanced where “in the course of committing the robbery the offender carried a firearm.” § 812.13(2)(a), Fla. Stat. (2013).
The Abandonment of Property Defense
Several of our district courts of appeal have held that a defendant who uses force-after abandoning stolen property cannot be convicted of robbery because the robbery statute requires that the taking and the use of force constitute a continuous series of acts or events. For example, in State v. Baker, 540 So.2d 847 (Fla. 3d DCA 1989), the Third District relied on this rule to hold that the trial court properly dismissed a robbery charge. In Baker, the defendant shoplifted merchandise from a store in a shopping mall. Id. at 848. “Upon noticing the guards approaching him, the defendant put down the [merchandise] and began to run. The guards stopped the defendant, who put up a strug *983 gle, shouting that he be left alone and that he had a gun. At no time during the struggle did the defendant attempt to grab the abandoned [merchandise] and run; [it] remained on the floor.” Id. Based on these facts, the Third District held that the defendant did not commit robbery as a matter of law because he “took the property without any use of force and abandoned the property before he used force to flee from the security guards.” Id.
Similarly, in Simmons v. State, 551 So.2d 607 (Fla. 5th DCA 1989), the Fifth District held that the defendant’s robbery conviction could not stand. There, the undisputed facts established that the defendant shoplifted merchandise from a store, was apprehended by store employees, and was escorted back into the store. Once back in the store, “the defendant removed the merchandise from her person and threw it to the floor.” Id. at 608. Store employees then instructed the defendant to accompany them to the security office. Id. “Only then did the defendant begin to resist and she struggled with one of the employees.” Id. The Fifth District reversed the defendant’s robbery conviction because “[t]here was no relationship between the force used and the taking as required by the [robbery] statute.” Id.; see also Kimbrough v. State, 788 So.2d 421, 421 (Fla. 1st DCA 2001) (reversing the defendant’s robbery conviction based on insufficient evidence because “ ‘the taking was completed without any use of force and the property abandoned before any force was employed’ ”) (quoting Simmons, 551 So.2d at 608).
Likewise, in Garcia v. State, 614 So.2d 568 (Fla. 2d DCA 1993), the Second District reversed the defendant’s robbery conviction. There, the defendant “attempted] to throw a duffle bag filled with [stolen] merchandise over the [store’s] fence to his companion. When approached by the security guard, the two men abandoned the bag and ran.... In a nearby parking lot, [the defendant] slowed down and pointed a handgun at the pursuing security guard.” Id. at 569. The Second District held that, since the defendant “did not place the security guard in fear during a continuous series of acts or events in connection with the taking of property, he could not be convicted of robbery.” Id.
Decisions such as these led the Second District in Peterson to conclude that, where the facts are disputed as to whether the defendant abandoned the stolen property prior to threatening or using force, a special jury instruction is required to “inform the jury that if the property was abandoned prior to the use of force, under the law the taking and the use of force were not a continuous series of acts or events.” Peterson, 24 So.3d at 690. However, in Rockmore’s case, the Fifth District disagreed with the Second District “regarding the necessity and propriety of [this] special instruction.” Rockmore, 114 So.3d at 964.
ANALYSIS
Arguing that the abandonment of property defense applies in his case, Rock-more makes the same two arguments here that he made before the Fifth District. First, he contends that the trial court should have granted his motion for judgment of acquittal because, as a matter of law, his act of threatening Arnold with a firearm was too remote from the theft to constitute robbery. Alternatively, he argues that, at a minimum, he is entitled to a new trial because the trial court erred by modifying his proffered special instruction to require that the victim be aware of the abandonment, and that the error was not harmless. We review both issues de novo. See Pagan v. State, 830 So.2d 792, 803 (Fla.2002) (“In reviewing a motion for *984 judgment of acquittal, a de novo standard of review applies.”); see also Butler v. State, 493 So.2d 451, 453 (Fla.1986) (conducting a de novo review as to the propriety of a special jury instruction and whether an erroneous instruction constituted harmless error).
We agree with the Fifth District that neither argument entitles Rockmore to relief. First, because competent, substantial evidence supports his conviction for robbery with a firearm, we hold that the trial court properly denied Rockmore’s motion for judgment of acquittal. See Pagan, 830 So.2d at 803. Specifically, Rock-more’s victim testified that Rockmore threatened him with a gun while fleeing with stolen property. Though Rockmore’s version of the facts differed, the victim’s testimony is competent, substantial evidence from which the jury could conclude that Rockmore committed robbery with a firearm. See § 812.13(1), (2)(a), Fla. Stat. Therefore, the trial court properly denied Rockmore’s motion for judgment of acquittal.
Regarding Rockmore’s second argument that he is entitled to a new trial because the trial court modified his special requested instruction on abandonment, we disagree. While defendants are generally entitled to have the jury instructed on any defense recognized by Florida law, one of the threshold showings a defendant must make in order to receive a special jury instruction is that “the special instruction [i]s supported by the evidence.” Stephens v. State, 787 So.2d 747, 756 (Fla.2001) (listing this as one of the three things a defendant seeking a special instruction must prove).
We conclude that the evidence in Rockmore’s case does not entitle him to a special instruction of the type approved by the Second District in Peterson. Thus, Rockmore received the benefit of an instruction on abandonment to which he was not entitled. Unlike the facts in Peterson where there was evidence to support Peterson’s claim that he left the stolen property inside the store before fleeing, Rock-more admitted to fleeing from the store with stolen merchandise. Moreover, it was undisputed that the alleged threat occurred during a chase that immediately followed Rockmore’s theft. The victim testified that it was when both he and Rockmore were pulling on Rockmore’s jacket that the stolen shirts dropped to the ground. As Rockmore’s theft and threatened use of force constituted a continuous series of acts or events under Florida’s robbery statute, we decline to extend the abandonment of property defense as it has been applied in Peterson and other cases to the facts of this case.
Our district courts have only applied the abandonment of property defense where there was evidence that it was the thief who abandoned the property and thus broke the chain between the taking and the use of force. See, e.g., Peterson, 24 So.3d at 688-89 (holding special instruction on abandonment required where defendant argued that he left his shopping basket containing stolen property inside the store and then shoved his way outside); Garcia, 614 So.2d at 569 (reversing robbery conviction where, upon being discovered by a security guard, the defendant abandoned his attempt to throw a bag of stolen merchandise over a fence, left the stolen property behind and ran, but sometime later pointed a gun at the pursuing security guard); Simmons, 551 So.2d at 608 (reversing shoplifter defendant’s robbery conviction where, after being caught, she removed the stolen merchandise from her person and struggled with a store employee only after she was instructed to go to the store’s security office); Baker, 540 So.2d at 848 (holding trial court properly *985 dismissed robbery charge where, upon being detected by security guards, shoplifter defendant placed stolen property on ground, never attempted to run with stolen property, and used force only in an attempt to avoid capture by the security guards); cf. Lemus v. State, 641 So.2d 177, 178-79 (Fla. 5th DCA 1994) (concluding that, where the defendant struggled with store employees while attempting to abandon stolen merchandise outside of a store, “it was a factual issue for the jury to determine whether or not there was a continuous series of acts or events to prove the elements of robbery”).
Competent, substantial evidence supported the conclusion that Rockmore failed to abandon the property. Thus, he received the benefit of a special instruction on abandonment that was not supported by the evidence, and the error was therefore harmless. See Marshall v. State, 604 So.2d 799, 803 (Fla.1992) (concluding that the trial court’s error in instructing the jury was harmless where it “inure[d] to the benefit of the defendant”). Because the evidence does not support the defense of abandonment, the trial court’s modification of the proffered special instruction to require that the victim be aware of the abandonment does not render it harmful, requiring a new trial.
CONCLUSION
For the foregoing reasons, we approve the result of the Fifth District’s decision affirming Rockmore’s conviction. Because we hold that the abandonment of property defense has no application to Rockmore’s case, we do not express any opinion concerning its application to different facts and leave it for our trial courts to determine whether the specific facts of the robbery cases before them warrant a special instruction on this defense.
It is so ordered.
LEWIS, QUINCE, and PERRY, JJ., concur.
CANADY, J., concurs in result.
POLSTON, C.J., concurs in part and dissents in part with an opinion, in which PARIENTE, J., concurs.
PARIENTE, J., concurs in part and dissents in part with an opinion.

. Section 775.082(9)(a)l., Florida Statutes (2008), provides that a person who commits an enumerated offense, including robbery, within three years after being released from a state correctional facility or other designated correctional facility, may be sentenced as a prison releasee reoffender, which requires that for a felony punishable by life, a defendant is subject to a mandatory sentence of life imprisonment.