PARIENTE, J.,
concurring in part and dissenting in part.
Dean Kenneth Rockmore is serving a sentence of life imprisonment after he was convicted of robbery with a firearm for stealing a package of T-shirts and a package of socks from Walmart, following a trial during which the jury received a legally inaccurate jury instruction on his defense of abandonment. I concur in Chief Justice Polston’s dissenting-in-part opinion that explains why Rockmore is entitled to a new trial based on the legally inaccurate special jury instruction given by the trial court in this case, but write separately to explain why I would go one step further and make clear that a legally accurate special instruction on abandonment is always necessary when the defendant presents evidence in support of this defense to robbery, as cogently articulated by the Second District Court of Appeal in Peterson v. State, 24 So.3d 686, 690 (Fla. 2d DCA 2009).
Specifically, Rockmore testified in defense at trial that while fleeing the store, he abandoned the stolen goods as he was chased across several parking lots by a Walmart loss prevention agent. Although the majority holds — by improperly relying on the State’s version of events to the exclusion of Rockmore’s — that Rockmore was not entitled to a special jury instruction on abandonment and that the trial court’s erroneous special instruction was therefore harmless, I conclude that Rock-more validly raised abandonment as a defense to the robbery charge in accordance with Florida law. Thus, Rockmore was entitled to the benefit of a legally accurate special jury instruction on his defense of abandonment so that the jury — rather than this Court — could consider whether the evidence supported this defense, and the legally inaccurate and misleading jury instruction given by the trial court regarding abandonment cannot be deemed harmless beyond a reasonable doubt.
The majority acknowledges that there was conflicting testimony for the jury to *988 resolve as to whether Rockmore actually abandoned the stolen property.[2] See majority op. at 980-81. The majority also recognizes that abandonment is a valid defense to the crime of robbery. See id. at 984-85. Because the jury was required to resolve the conflicting testimony on the valid defense of abandonment, Rockmore was entitled to a legally accurate special instruction on this defense, which would have correctly informed the jury of the elements necessary to find that Rockmore had successfully defended against the charge of robbery.
While the trial court did instruct the jury regarding the abandonment defense in this case, the instruction was legally inaccurate because it added a victim awareness requirement for abandonment that is not supported by Florida law. I therefore agree with Chief Justice Pol-ston’s dissenting-in-part opinion that the trial court’s error in modifying, over defense objection, the special jury instruction on abandonment was not harmless beyond a reasonable doubt. Further, although the majority avoids the issue, I would approve the Second District’s decision in the conflict case, Peterson, 24 So.3d 686, which explained that a special jury instruction on abandonment is warranted when the defendant presents evidence to support a theory of abandonment as a defense to robbery.
Although the majority specifically recognizes that the conflict issue in this case concerns the necessity of a special instruction where the defendant’s theory is that he or she abandoned the stolen property prior to threatening or using force, see majority op. at 980, the majority does not explicitly resolve this conflict in a manner that provides any clarity for future cases. Instead, the majority actually distinguishes the facts of the conflict case and then “leavefs] it for our trial courts to determine whether the specific facts of the robbery cases before them warrant a special instruction on this defense.” Id. at 985. The majority does this while ignoring that the trial court in this case in fact did conclude that a special instruction on abandonment was warranted based on the evidence.
I respectfully disagree with the majority’s decision to improperly resolve the conflicting testimony presented at trial on the issue of abandonment in concluding that the abandonment of property defense has “no application to Rockmore’s case.” Id. This conclusion is not supported by a review of the record. Indeed, even the majority itself acknowledges that “it was disputed as to whether Rockmore’s actions during the chase elevated the theft to a robbery.” Id. at 980. Specifically, as Chief Justice Polston’s dissentiUg-in-part opinion clearly explains, Rockmore presented evidence in support of his abandonment defense, testifying that he left the stolen property behind before the victim alleged that Rockmore threatened him with a gun. See dissenting-in-part op. at 985-86 (Pol-ston, C.J.). The majority’s conclusion that Rockmore was not entitled to a legally accurate jury instruction on abandonment because competent, substantial evidence supports the State’s version of events is troubling.
In my view, because Rockmore raised abandonment as a defense and there was conflicting evidence presented to the jury as to whether or not he actually abandoned the property, he was entitled to the benefit of a special jury instruction on *989 abandonment of the kind the Second District approved in Peterson. In that case, the Second District cogently explained why a special instruction is necessary where the defendant asserts abandonment as a defense to robbery:
[T]he standard instruction did not adequately cover Peterson’s theory of defense. The standard instruction required the jury to find that force was used “in the course of the taking,” which was then defined as “prior to, contemporaneous with, or subsequent to” the taking and that the use of force and the taking of the property “constitute[d] a continuous series of acts or events.” Fla. Std. Jury Insto. (Crim.) 15.1. The standard instruction did not inform the jury that if the property was abandoned prior to the use of force, under the law the taking and the use of force were not a continuous series [of] acts or events. As such, the instruction did not cover Peterson’s theory of defense.
Peterson, 24 So.3d at 690 (emphasis added).
In order to be convicted of robbery, the defendant must commit a taking of money or other property of some value, with intent to either permanently or temporarily deprive the person or the owner of the money or other property, when in the course of the taking there is the use of force, violence, assault, or putting in fear. § 812.13(1), Fla. Stat. (2013). Under the robbery statute, which is mirrored in the standard jury instruction, an act is deemed “in the course of the taking” if it “occurs either prior to, contemporaneous with, or subsequent to the taking of the property and if it and the act of taking constitute a continuous series of acts or events.” § 812.13(3)(b), Fla. Stat. (2013); Fla. Std. Jury Instr. (Crim.) 15.1. There is thus no basis for a defendant to be convicted of robbery if he or she abandons the property prior to the use or threat of force.
However, as the Second District recognized in Peterson, the standard jury instruction on robbery does not adequately inform the jury that, if the defendant abandons the property prior to threatening or using force, the defendant has not committed a robbery because the taking and use of force were not “a continuous series of acts or events,” as required by the statute. § 812.13(3)(b), Fla. Stat. In other words, the standard jury instruction fails to make clear to the jury that, if it believes the defendant’s theory that he or she abandoned the stolen property, the State has not proven the crime of robbery.
There are three requirements a defendant must satisfy in order to be entitled to a special jury instruction: (1) the special instruction is supported by the evidence; (2) the standard instruction does not adequately cover the theory of defense; and (3) the special instruction is a correct statement of the law and not misleading or confusing. See Stephens v. State, 787 So.2d 747, 756 (Fla.2001). The majority does not dispute that Rockmore satisfied two of those requirements: (1) that the special instruction approved in Peterson is a correct statement of the law, and (2) that the standard robbery instruction does not adequately cover the abandonment theory of defense. Yet, the majority concludes— through what Chief Justice Polston correctly refers to as a “selective view of the evidence,” dissenting-in-part op. at 986 (Polston, C.J.) — that Rockmore cannot satisfy the third requirement because the evidence did not entitle him to a special instruction in this case. See majority op. at 984. This conclusion is accurate only if the State’s version of the facts is accepted as true and Rockmore’s is not — which is a question properly left for the jury to re *990 solve upon being correctly instructed on the law.
Moreover, the majority’s decision fails to resolve the legal conflict that forms the basis for this Court to exercise jurisdiction. Even though the majority accepts jurisdiction in this case on the basis of conflict with Peterson, it then proceeds to distinguish the facts of Peterson as a way to avoid the issue of whether the trial court erred in modifying the special instruction on abandonment. The majority never squarely confronts the conflict with Peterson specifically identified by the Fifth District Court of Appeal in its decision below, where the district court acknowledged conflict “regarding the necessity and propriety of the special instruction regarding ‘abandonment.’ ” Rockmore v. State, 114 So.3d 958, 964 (Fla. 5th DCA 2012).
I would address this issue head on to provide clarity to this area of the law, and would approve the Second District’s decision in Peterson that a special jury instruction is warranted when the defendant puts forth evidence in support of abandonment as a defense to robbery. Here, Rock-more’s testimony specifically placed abandonment at issue, establishing a basis for the jury to conclude that he had abandoned the stolen property prior to the threat of force. Therefore, he was entitled to a special instruction on abandonment, and the trial court erred in modifying the special instruction in a manner that was misleading and inconsistent with the law, which does not condition the abandonment defense on the victim’s awareness.
Accordingly, I concur in Chief Justice Polston’s opinion that explains why Rock-more is entitled to a new trial based on the legally inaccurate special jury instruction given by the trial court. However, I would also go one step further and conclude that, when a defendant asserts abandonment as a defense to robbery and presents evidence in support of this defense, the defendant is entitled to a special jury instruction of the kind approved by the Second District in Peterson that “inform[s] the jury that if the property was abandoned prior to the use of force, under the law the taking and the use of force were not a continuous series [of] acts or events.” Peterson, 24 So.3d at 690. This procedure would thus appropriately leave it up to the jury to resolve the conflicting evidence after being correctly informed about the law. For all these reasons, I would reverse Rockmore’s life sentence for robbery and remand for a new trial where he would have the benefit of a legally accurate special jury instruction on his defense of abandonment.[3]

. As a result of this conflicting testimony on the issue of abandonment, I concur in the majority’s holding that the trial court properly denied the defense’s motion for a judgment of acquittal.

. Rockmore's life sentence was the result of his classification as a Prison Releasee Reof-fender (PRR) under section 775.082(9)(a)l., Florida Statutes (2009). This statute requires that for an enumerated felony such as robbery with a firearm that is punishable by life, the defendant must be sentenced to a term of imprisonment for life. § 775.082(9)(a)3., Fla. Stat. (2009).
If Rockmore had been convicted of either of the two lesser-included offenses of petit theft or resisting a merchant, the PRR statute would not have applied. § 775.082(9)(a)l., Fla. Stat. (listing the enumerated offenses for which an offender may be sentenced as a PRR). If Rockmore had instead been charged with and convicted of aggravated assault with a deadly weapon, the PRR statute would have mandated a sentence of only five-years’ imprisonment. See § 775.082(9)(a)3., Fla. Stat. (explaining that a third-degree felony is punishable by a term of imprisonment of five years); § 784.021(2), Fla. Stat. (2009) *991 (defining aggravated assault with a deadly weapon as a third-degree felony).
In other words, the difference under the PRR statute between a conviction for robbery with a firearm and a conviction for aggravated assault with a deadly weapon — arguably the most serious alternative offense for which Rockmore could have been charged based on the facts of this case — is the difference between spending five years or the rest of his life in prison.