# Supreme Court of Florida

_____

No. SC12-577
_____

**DEAN KENNETH ROCKMORE,**
Petitioner,

vs.

**STATE OF FLORIDA,**
Respondent.

[June 5, 2014]

LABARGA, J.

Dean Kenneth Rockmore seeks review of the Fifth District Court of
Appeal's decision in Rockmore v. State, 114 So. 3d 958 (Fla. 5th DCA 2012), on
the ground that it expressly and directly conflicts with the Second District Court of
Appeal's decision in Peterson v. State, 24 So. 3d 686 (Fla. 2d DCA 2009), on the
same question of law. Specifically, the district courts reached conflicting decisions
concerning the necessity of a special jury instruction where the defendant's theory
of defense to a robbery charge is that he abandoned the stolen property prior to
threatening or using force. We have jurisdiction. See art. V, § 3(b)(3), Fla. Const.

For the reasons set forth below, we approve the result of the Fifth District's decision affirming Rockmore's conviction.

## BACKGROUND

The State charged Rockmore with robbery with a firearm. At trial, it was undisputed that Rockmore stole a package of T-shirts and a package of socks from Walmart. It was also undisputed that Walmart loss prevention agent Stephen Arnold, who had observed Rockmore conceal the shirts and socks under his clothing and exit the store without paying, chased Rockmore across several parking lots in an attempt to retrieve the stolen property and have Rockmore return to the store with him. However, it was disputed as to whether Rockmore's actions during the chase elevated the theft to a robbery.

Arnold testified that he never lost sight of Rockmore during the pursuit and that when Rockmore was trying to remove his jacket, Arnold pulled on the jacket at the same time and the stolen shirts came out. When the shirts fell, Arnold testified that Rockmore told him, "There's your merchandise. . . . I'm not going to come with you, I'm not." However, Arnold said that he kept following Rockmore because he knew that Rockmore still had the socks and because he wanted to get Rockmore's information. Arnold testified that Rockmore eventually reached a parked car with a man and a woman inside. Arnold testified that before Rockmore entered the car, Rockmore turned to face him from five to ten feet away, lifted his

shirt, displayed a gun that was tucked into his waistband, and said "Let it go, let it be, you don't want none." At that point, Arnold said that he backed off because he was scared, and Rockmore left in the car.

In contrast, Rockmore testified that the socks fell out of his clothing while he was running through the grass, that he took off his jacket because it was hot, and that he threw the package of shirts down. After the shirts fell, Rockmore testified that he told Arnold, "Look, give me a break, man. You got your S back." Rockmore also testified that he did not have any of the stolen merchandise on him by the time he got to the car. Though Rockmore testified that he could not remember if he said anything else to Arnold before he got into the car, he denied having a weapon, threatening Arnold with a weapon, and committing a robbery. Testimony at trial established that police recovered Rockmore's jacket and the package of shirts from the scene. However, the socks were never found.

After the State rested, Rockmore moved for a judgment of acquittal. He argued that he had abandoned the stolen merchandise before he allegedly threatened Arnold with a firearm; thus, the use of force was too remote from the taking to support a conviction under the robbery statute, which requires that the taking of property and the use of force constitute a continuous series of acts or events. The trial court denied the motion.

Before the case was submitted to the jury, Rockmore requested that, in addition to the standard robbery jury instruction, the trial court give a special jury instruction on abandonment similar to the instruction the Second District in Peterson approved as a correct statement of law. Specifically, the Second District held that Peterson's theory of defense to the charge of robbery—that "he had transferred the stolen merchandise to [a] shopping basket that he abandoned before shoving his way out of the store"—and the evidence presented in that case entitled Peterson to the following special jury instruction: "[I]f it is established that the property was abandoned prior to the use of force then you must find the Defendant not guilty of a robbery." Peterson, 24 So. 3d at 688-89.

The trial court in this case gave the requested special instruction but, over Rockmore's objection, modified it to require that the abandonment be voluntary and that the victim be aware of the abandonment, in order to establish the defense. As modified, the special instruction was given to the jury as follows:

> If you find that the defendant took the merchandise without any use of force and had completely and voluntarily abandoned the property before he used any force and the victim was aware of such abandonment, then you should find the defendant not guilty of robbery with a firearm, deadly weapon, or weapon.

(Emphasis added). The jury convicted Rockmore of robbery with a firearm and, because Rockmore was a prison releasee reoffender, the trial court sentenced him to life.[1]

Rockmore appealed his conviction to the Fifth District Court of Appeal, arguing that the trial court erred by denying his motion for judgment of acquittal and by improperly modifying his proffered abandonment instruction. The Fifth District rejected both arguments and affirmed Rockmore's conviction. Rockmore, 114 So. 3d at 959. In so holding, the Fifth District disagreed with the Second District's decision in Peterson regarding the necessity for a special instruction on abandonment and acknowledged conflict with that decision. See Rockmore, 114 So. 3d at 964.

Rockmore raises the same arguments in this Court. To resolve them, it is necessary to explain Florida's robbery statute and the abandonment of property defense that several of our district courts have held precludes its application.

---

1. Section 775.082(9)(a)1., Florida Statutes (2008), provides that a person who commits an enumerated offense, including robbery, within three years after being released from a state correctional facility or other designated correctional facility, may be sentenced as a prison releasee reoffender, which requires that for a felony punishable by life, a defendant is subject to a mandatory sentence of life imprisonment.

**Florida's Robbery Statute**

Before 1987, Florida followed the common law rule for robbery, which required that the " 'force, violence, assault, or putting in fear' must occur prior to or contemporaneous with the taking of property." Royal v. State, 490 So. 2d 44, 45 (Fla. 1986), superseded by statute as recognized in Robinson v. State, 692 So. 2d 883, 886 n.9 (Fla. 1997). Thus, under the former law, if violence was not used to take property, but was used to flee with the stolen property, there could be no robbery. See Royal, 490 So. 2d at 45-46 (holding that shoplifters who pushed a detective, punched an employee, and displayed a firearm in order to escape with stolen property could not be convicted of robbery because the violence occurred after the taking). However, in 1987, the Legislature amended the robbery statute to prevent this result by "expand[ing] robbery to include force occurring in an attempt to take money or property, or in flight after the attempt or taking." Rockmore, 114 So. 3d at 963 (quoting Fla. H.R. Comm. on Robbery, HB 758 (1987) Staff Analysis 1 (final June 26, 1987) (on file with Comm.)).

Under current law, which is the same law that was in effect at the time of Rockmore's crime, "robbery" is defined as

> the taking of money or other property which may be the subject of larceny from the person or custody of another, with intent to either permanently or temporarily deprive the person or the owner of the money or other property, when in the course of the taking there is the use of force, violence, assault, or putting in fear.

§ 812.13(1), Fla. Stat. (2013).  The robbery statute further provides that "[a]n act shall be deemed 'in the course of the taking' if it occurs either prior to, contemporaneous with, or subsequent to the taking of the property and if it and the act of taking constitute a continuous series of acts or events."  § 812.13(3)(b), Fla. Stat. (2013).  Under the robbery statute, "[a]n act shall be deemed 'in the course of committing the robbery' if it occurs in an attempt to commit robbery or in flight after the attempt or commission."  § 812.13(3)(a), Fla. Stat. (2013).  In addition, the punishment for robbery is enhanced where "in the course of committing the robbery the offender carried a firearm."  § 812.13(2)(a), Fla. Stat. (2013).

## The Abandonment of Property Defense

Several of our district courts of appeal have held that a defendant who uses force after abandoning stolen property cannot be convicted of robbery because the robbery statute requires that the taking and the use of force constitute a continuous series of acts or events.  For example, in State v. Baker, 540 So. 2d 847 (Fla. 3d DCA 1989), the Third District relied on this rule to hold that the trial court properly dismissed a robbery charge.  In Baker, the defendant shoplifted merchandise from a store in a shopping mall.  Id. at 848.  "Upon noticing the guards approaching him, the defendant put down the [merchandise] and began to run.  The guards stopped the defendant, who put up a struggle, shouting that he be left alone and that he had a gun.  At no time during the struggle did the defendant

- 7 -

attempt to grab the abandoned [merchandise] and run; [it] remained on the floor." Id. Based on these facts, the Third District held that the defendant did not commit robbery as a matter of law because he "took the property without any use of force and abandoned the property before he used force to flee from the security guards." Id.

Similarly, in Simmons v. State, 551 So. 2d 607 (Fla. 5th DCA 1989), the Fifth District held that the defendant's robbery conviction could not stand. There, the undisputed facts established that the defendant shoplifted merchandise from a store, was apprehended by store employees, and was escorted back into the store. Once back in the store, "the defendant removed the merchandise from her person and threw it to the floor." Id. at 608. Store employees then instructed the defendant to accompany them to the security office. Id. "Only then did the defendant begin to resist and she struggled with one of the employees." Id. The Fifth District reversed the defendant's robbery conviction because "[t]here was no relationship between the force used and the taking as required by the [robbery] statute." Id.; see also Kimbrough v. State, 788 So. 2d 421, 421 (Fla. 1st DCA 2001) (reversing the defendant's robbery conviction based on insufficient evidence because " 'the taking was completed without any use of force and the property abandoned before any force was employed' ") (quoting Simmons, 551 So. 2d at 608).

Likewise, in Garcia v. State, 614 So. 2d 568 (Fla. 2d DCA 1993), the Second District reversed the defendant's robbery conviction. There, the defendant "attempt[ed] to throw a duffle bag filled with [stolen] merchandise over the [store's] fence to his companion. When approached by the security guard, the two men abandoned the bag and ran. . . . In a nearby parking lot, [the defendant] slowed down and pointed a handgun at the pursuing security guard." Id. at 569. The Second District held that, since the defendant "did not place the security guard in fear during a continuous series of acts or events in connection with the taking of property, he could not be convicted of robbery." Id.

Decisions such as these led the Second District in Peterson to conclude that, where the facts are disputed as to whether the defendant abandoned the stolen property prior to threatening or using force, a special jury instruction is required to "inform the jury that if the property was abandoned prior to the use of force, under the law the taking and the use of force were not a continuous series of acts or events." Peterson, 24 So. 3d at 690. However, in Rockmore's case, the Fifth District disagreed with the Second District "regarding the necessity and propriety of [this] special instruction." Rockmore, 114 So. 3d at 964.

## ANALYSIS

Arguing that the abandonment of property defense applies in his case, Rockmore makes the same two arguments here that he made before the Fifth

- 9 -

District. First, he contends that the trial court should have granted his motion for judgment of acquittal because, as a matter of law, his act of threatening Arnold with a firearm was too remote from the theft to constitute robbery. Alternatively, he argues that, at a minimum, he is entitled to a new trial because the trial court erred by modifying his proffered special instruction to require that the victim be aware of the abandonment, and that the error was not harmless. We review both issues de novo. See Pagan v. State, 830 So. 2d 792, 803 (Fla. 2002) ("In reviewing a motion for judgment of acquittal, a de novo standard of review applies."); see also Butler v. State, 493 So. 2d 451, 453 (Fla. 1986) (conducting a de novo review as to the propriety of a special jury instruction and whether an erroneous instruction constituted harmless error).

We agree with the Fifth District that neither argument entitles Rockmore to relief. First, because competent, substantial evidence supports his conviction for robbery with a firearm, we hold that the trial court properly denied Rockmore's motion for judgment of acquittal. See Pagan, 830 So. 2d at 803. Specifically, Rockmore's victim testified that Rockmore threatened him with a gun while fleeing with stolen property. Though Rockmore's version of the facts differed, the victim's testimony is competent, substantial evidence from which the jury could conclude that Rockmore committed robbery with a firearm. See § 812.13(1),

(2)(a), Fla. Stat.  Therefore, the trial court properly denied Rockmore's motion for judgment of acquittal.

Regarding Rockmore's second argument that he is entitled to a new trial because the trial court modified his special requested instruction on abandonment, we disagree.  While defendants are generally entitled to have the jury instructed on any defense recognized by Florida law, one of the threshold showings a defendant must make in order to receive a special jury instruction is that "the special instruction [i]s supported by the evidence."  Stephens v. State, 787 So. 2d 747, 756 (Fla. 2001) (listing this as one of the three things a defendant seeking a special instruction must prove).

We conclude that the evidence in Rockmore's case does not entitle him to a special instruction of the type approved by the Second District in Peterson.  Thus, Rockmore received the benefit of an instruction on abandonment to which he was not entitled.  Unlike the facts in Peterson where there was evidence to support Peterson's claim that he left the stolen property inside the store before fleeing, Rockmore admitted to fleeing from the store with stolen merchandise.  Moreover, it was undisputed that the alleged threat occurred during a chase that immediately followed Rockmore's theft.  The victim testified that it was when both he and Rockmore were pulling on Rockmore's jacket that the stolen shirts dropped to the ground.  As Rockmore's theft and threatened use of force constituted a continuous

series of acts or events under Florida's robbery statute, we decline to extend the abandonment of property defense as it has been applied in Peterson and other cases to the facts of this case.

Our district courts have only applied the abandonment of property defense where there was evidence that it was the thief who abandoned the property and thus broke the chain between the taking and the use of force. See, e.g., Peterson, 24 So. 3d at 688-89 (holding special instruction on abandonment required where defendant argued that he left his shopping basket containing stolen property inside the store and then shoved his way outside); Garcia, 614 So. 2d at 569 (reversing robbery conviction where, upon being discovered by a security guard, the defendant abandoned his attempt to throw a bag of stolen merchandise over a fence, left the stolen property behind and ran, but sometime later pointed a gun at the pursuing security guard); Simmons, 551 So. 2d at 608 (reversing shoplifter defendant's robbery conviction where, after being caught, she removed the stolen merchandise from her person and struggled with a store employee only after she was instructed to go to the store's security office); Baker, 540 So. 2d at 848 (holding trial court properly dismissed robbery charge where, upon being detected by security guards, shoplifter defendant placed stolen property on ground, never attempted to run with stolen property, and used force only in an attempt to avoid capture by the security guards); cf. Lemus v. State, 641 So. 2d 177, 178-79 (Fla.

5th DCA 1994) (concluding that, where the defendant struggled with store employees while attempting to abandon stolen merchandise outside of a store, "it was a factual issue for the jury to determine whether or not there was a continuous series of acts or events to prove the elements of robbery").

Competent, substantial evidence supported the conclusion that Rockmore failed to abandon the property. Thus, he received the benefit of a special instruction on abandonment that was not supported by the evidence, and the error was therefore harmless. See Marshall v. State, 604 So. 2d 799, 803 (Fla. 1992) (concluding that the trial court's error in instructing the jury was harmless where it "inure[d] to the benefit of the defendant"). Because the evidence does not support the defense of abandonment, the trial court's modification of the proffered special instruction to require that the victim be aware of the abandonment does not render it harmful, requiring a new trial.

## CONCLUSION

For the foregoing reasons, we approve the result of the Fifth District's decision affirming Rockmore's conviction. Because we hold that the abandonment of property defense has no application to Rockmore's case, we do not express any opinion concerning its application to different facts and leave it for our trial courts to determine whether the specific facts of the robbery cases before them warrant a special instruction on this defense.

It is so ordered.

LEWIS, QUINCE, and PERRY, JJ., concur.
CANADY, J., concurs in result.
POLSTON, C.J., concurs in part and dissents in part with an opinion, in which
PARIENTE, J., concurs.
PARIENTE, J., concurs in part and dissents in part with an opinion.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION, AND
IF FILED, DETERMINED.

POLSTON, C.J., concurring in part and dissenting in part.

I agree that the jury should have gotten the case to decide, but the trial court gave an erroneous jury instruction on abandonment that is not harmless. Therefore, I would quash the Fifth District's decision affirming Rockmore's conviction and remand for a new trial.

First, the majority's conclusion that Rockmore's abandonment defense was not supported by the evidence does not consider all the evidence by improperly focusing on the victim's testimony to the exclusion of Rockmore's. Under Rockmore's version of events, once he knew he was caught, he chose to leave the stolen property behind. Specifically, Rockmore testified that the socks fell out of his clothing during the pursuit and that he threw the T-shirts down. There was no testimony that Rockmore tried to retrieve the stolen items once they were out of his possession. To the contrary, Rockmore specifically testified that he told the pursuing victim, "Look, give me a break, man. You got your S back." There was

- 14 -

no dispute that Rockmore made this statement well before the victim alleged that Rockmore threatened him with a gun.

Therefore, like the defendants in the abandonment cases the majority cites, Rockmore was entitled to defend against his robbery charge by arguing that his abandonment of the stolen property broke the nexus between the taking of the property and the use of force required by the robbery statute. See § 812.13(1), (3)(b), Fla. Stat. (2013) (defining robbery to require that the taking of property and the use of force constitute a continuous series of acts or events); see also Peterson v. State, 24 So. 3d 686, 689-90 (Fla. 2d DCA 2009) (recognizing an abandonment of property defense to robbery); Garcia v. State, 614 So. 2d 568, 569 (Fla. 2d DCA 1993) (reversing defendant's robbery conviction where the defendant abandoned the stolen property prior to threatening a pursuing security guard with a gun); State v. Baker, 540 So. 2d 847, 848 (Fla. 3d DCA 1989) (holding trial court properly dismissed a robbery charge where the undisputed facts established that "the defendant took the property without any use of force and abandoned the property before he used force to flee from the security guards"); Simmons v. State, 551 So. 2d 607, 608 (Fla. 5th DCA 1989) (reversing defendant's robbery conviction where the defendant's struggle with store employees occurred after she "removed the [stolen] merchandise from her person and threw it to the floor").

Since Rockmore presented evidence in support of his abandonment defense but takes issue with the trial court's abandonment instruction, we must determine whether the instruction was correct. The trial court instructed the jury that it must find Rockmore not guilty of robbery with a firearm if it finds that he "took the merchandise without any use of force and had completely and voluntarily abandoned the property before he used any force." However, over Rockmore's objection, the trial court modified the proffered instruction to include the requirement that "the victim was aware of such abandonment."

Our precedent is clear that "it is the duty of the [trial] court to define each and every element" of the crime and that this duty equally applies to "charging on the law relative to the defense." Motley v. State, 20 So. 2d 798, 800 (Fla. 1945). Contrary to the Fifth District's conclusion below, a party does not invite the trial court to breach this duty simply by proffering an instruction that the trial court modifies—over objection—to include an incorrect statement of law. See Rockmore v. State, 114 So. 3d 958, 964 (Fla. 5th DCA 2012) (concluding Rockmore invited the trial court's error).

In this case, there is no serious dispute that the trial court erred by modifying Rockmore's proffered abandonment instruction to include a victim-awareness requirement. Though the majority's selective view of the evidence precludes it from reaching this issue, as illustrated by the abandonment cases the majority cites,

- 16 -

none of our district courts have conditioned the abandonment defense's application on the victim's awareness. See, e.g., Peterson, 24 So. 3d at 688-89 (concluding abandonment defense applied where testimony conflicted as to whether defendant abandoned the stolen property prior to using force). Moreover, even the Fifth District recognized below that the trial court's addition of a victim-awareness requirement was "erroneous." Rockmore, 114 So. 3d at 964.

Because Rockmore objected to the modification, the next question is whether the trial court's error was harmless. As this Court has explained,

> [t]he harmless error test . . . places the burden on the state, as the beneficiary of the error, to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict or, alternatively stated, that there is no reasonable possibility that the error contributed to the conviction. Application of the test requires an examination of the entire record by the appellate court including a close examination of the permissible evidence on which the jury could have legitimately relied[.]

State v. DiGuilio, 491 So. 2d 1129, 1135 (Fla. 1986) (citations omitted).

In this case, the trial court's error was not harmless beyond a reasonable doubt and certainly did not inure to Rockmore's benefit as the majority holds. Though perhaps not probable, it is possible that a reasonable juror could have believed that Rockmore abandoned the stolen property before he threatened the victim, or at the very least had a reasonable doubt about it since the chase occurred at night and across several parking lots. That same juror could have also believed that the victim—who testified that he was certain Rockmore still had the stolen

socks when he threatened him—was not aware that Rockmore had abandoned both the socks and the T-shirts. However, given the trial court's erroneous instruction, there is a reasonable possibility that this juror—who would have otherwise voted to convict Rockmore of a lesser-included offense (such as aggravated assault with a firearm)—was compelled to convict Rockmore of robbery with a firearm. This reasonable possibility that the trial court's error in instructing the jury contributed to Rockmore's conviction is all that is required to establish the error was not harmless. Consequently, Rockmore is entitled to a new trial. See DiGuilio, 491 So. 2d at 1135.

I respectfully concur in part and dissent in part.

PARIENTE, J., concurs.


PARIENTE, J., concurring in part and dissenting in part.

Dean Kenneth Rockmore is serving a sentence of life imprisonment after he was convicted of robbery with a firearm for stealing a package of T-shirts and a package of socks from Walmart, following a trial during which the jury received a legally inaccurate jury instruction on his defense of abandonment. I concur in Chief Justice Polston's dissenting-in-part opinion that explains why Rockmore is entitled to a new trial based on the legally inaccurate special jury instruction given by the trial court in this case, but write separately to explain why I would go one

step further and make clear that a legally accurate special instruction on abandonment is always necessary when the defendant presents evidence in support of this defense to robbery, as cogently articulated by the Second District Court of Appeal in Peterson v. State, 24 So. 3d 686, 690 (Fla. 2d DCA 2009).

Specifically, Rockmore testified in defense at trial that while fleeing the store, he abandoned the stolen goods as he was chased across several parking lots by a Walmart loss prevention agent. Although the majority holds—by improperly relying on the State's version of events to the exclusion of Rockmore's—that Rockmore was not entitled to a special jury instruction on abandonment and that the trial court's erroneous special instruction was therefore harmless, I conclude that Rockmore validly raised abandonment as a defense to the robbery charge in accordance with Florida law. Thus, Rockmore was entitled to the benefit of a legally accurate special jury instruction on his defense of abandonment so that the jury—rather than this Court—could consider whether the evidence supported this defense, and the legally inaccurate and misleading jury instruction given by the trial court regarding abandonment cannot be deemed harmless beyond a reasonable doubt.

The majority acknowledges that there was conflicting testimony for the jury to resolve as to whether Rockmore actually abandoned the stolen property.[2] See majority op. at 2. The majority also recognizes that abandonment is a valid defense to the crime of robbery. See id. at 11-13. Because the jury was required to resolve the conflicting testimony on the valid defense of abandonment, Rockmore was entitled to a legally accurate special instruction on this defense, which would have correctly informed the jury of the elements necessary to find that Rockmore had successfully defended against the charge of robbery.

While the trial court did instruct the jury regarding the abandonment defense in this case, the instruction was legally inaccurate because it added a victim awareness requirement for abandonment that is not supported by Florida law. I therefore agree with Chief Justice Polston's dissenting-in-part opinion that the trial court's error in modifying, over defense objection, the special jury instruction on abandonment was not harmless beyond a reasonable doubt. Further, although the majority avoids the issue, I would approve the Second District's decision in the conflict case, Peterson, 24 So. 3d 686, which explained that a special jury instruction on abandonment is warranted when the defendant presents evidence to support a theory of abandonment as a defense to robbery.

---

2. As a result of this conflicting testimony on the issue of abandonment, I concur in the majority's holding that the trial court properly denied the defense's motion for a judgment of acquittal.

- 20 -

Although the majority specifically recognizes that the conflict issue in this case concerns the necessity of a special instruction where the defendant's theory is that he or she abandoned the stolen property prior to threatening or using force, see majority op. at 1, the majority does not explicitly resolve this conflict in a manner that provides any clarity for future cases. Instead, the majority actually distinguishes the facts of the conflict case and then "leave[s] it for our trial courts to determine whether the specific facts of the robbery cases before them warrant a special instruction on this defense." Id. at 13. The majority does this while ignoring that the trial court in this case in fact did conclude that a special instruction on abandonment was warranted based on the evidence.

I respectfully disagree with the majority's decision to improperly resolve the conflicting testimony presented at trial on the issue of abandonment in concluding that the abandonment of property defense has "no application to Rockmore's case." Id. This conclusion is not supported by a review of the record. Indeed, even the majority itself acknowledges that "it was disputed as to whether Rockmore's actions during the chase elevated the theft to a robbery." Id. at 2. Specifically, as Chief Justice Polston's dissenting-in-part opinion clearly explains, Rockmore presented evidence in support of his abandonment defense, testifying that he left the stolen property behind before the victim alleged that Rockmore threatened him with a gun. See dissenting-in-part op. at 14-15 (Polston, C.J.). The

- 21 -

majority's conclusion that Rockmore was not entitled to a legally accurate jury instruction on abandonment because competent, substantial evidence supports the State's version of events is troubling.

In my view, because Rockmore raised abandonment as a defense and there was conflicting evidence presented to the jury as to whether or not he actually abandoned the property, he was entitled to the benefit of a special jury instruction on abandonment of the kind the Second District approved in Peterson. In that case, the Second District cogently explained why a special instruction is necessary where the defendant asserts abandonment as a defense to robbery:

> [T]he standard instruction did not adequately cover Peterson's theory of defense. The standard instruction required the jury to find that force was used "in the course of the taking," which was then defined as "prior to, contemporaneous with, or subsequent to" the taking and that the use of force and the taking of the property "constitute[d] a continuous series of acts or events." Fla. Std. Jury Instr. (Crim.) 15.1. The standard instruction did not inform the jury that if the property was abandoned prior to the use of force, under the law the taking and the use of force were not a continuous series [of] acts or events. As such, the instruction did not cover Peterson's theory of defense.

Peterson, 24 So. 3d at 690 (emphasis added).

In order to be convicted of robbery, the defendant must commit a taking of money or other property of some value, with intent to either permanently or temporarily deprive the person or the owner of the money or other property, when in the course of the taking there is the use of force, violence, assault, or putting in fear. § 812.13(1), Fla. Stat. (2013). Under the robbery statute, which is mirrored

- 22 -

in the standard jury instruction, an act is deemed "in the course of the taking" if it "occurs either prior to, contemporaneous with, or subsequent to the taking of the property and if it and the act of taking constitute a continuous series of acts or events." § 812.13(3)(b), Fla. Stat. (2013); Fla. Std. Jury Instr. (Crim.) 15.1. There is thus no basis for a defendant to be convicted of robbery if he or she abandons the property prior to the use or threat of force.

However, as the Second District recognized in Peterson, the standard jury instruction on robbery does not adequately inform the jury that, if the defendant abandons the property prior to threatening or using force, the defendant has not committed a robbery because the taking and use of force were not "a continuous series of acts or events," as required by the statute. § 812.13(3)(b), Fla. Stat. In other words, the standard jury instruction fails to make clear to the jury that, if it believes the defendant's theory that he or she abandoned the stolen property, the State has not proven the crime of robbery.

There are three requirements a defendant must satisfy in order to be entitled to a special jury instruction: (1) the special instruction is supported by the evidence; (2) the standard instruction does not adequately cover the theory of defense; and (3) the special instruction is a correct statement of the law and not misleading or confusing. See Stephens v. State, 787 So. 2d 747, 756 (Fla. 2001). The majority does not dispute that Rockmore satisfied two of those requirements:

- 23 -

(1) that the special instruction approved in <u>Peterson</u> is a correct statement of the law, and (2) that the standard robbery instruction does not adequately cover the abandonment theory of defense. Yet, the majority concludes—through what Chief Justice Polston correctly refers to as a "selective view of the evidence," dissenting-in-part op. at 16 (Polston, C.J.)—that Rockmore cannot satisfy the third requirement because the evidence did not entitle him to a special instruction in this case. <u>See</u> majority op. at 11. This conclusion is accurate only if the State's version of the facts is accepted as true and Rockmore's is not—which is a question properly left for the jury to resolve upon being correctly instructed on the law.

Moreover, the majority's decision fails to resolve the legal conflict that forms the basis for this Court to exercise jurisdiction. Even though the majority accepts jurisdiction in this case on the basis of conflict with <u>Peterson</u>, it then proceeds to distinguish the facts of <u>Peterson</u> as a way to avoid the issue of whether the trial court erred in modifying the special instruction on abandonment. The majority never squarely confronts the conflict with <u>Peterson</u> specifically identified by the Fifth District Court of Appeal in its decision below, where the district court acknowledged conflict "regarding the necessity and propriety of the special instruction regarding 'abandonment.' " <u>Rockmore v. State</u>, 114 So. 3d 958, 964 (Fla. 5th DCA 2012).

- 24 -

I would address this issue head on to provide clarity to this area of the law, and would approve the Second District's decision in Peterson that a special jury instruction is warranted when the defendant puts forth evidence in support of abandonment as a defense to robbery. Here, Rockmore's testimony specifically placed abandonment at issue, establishing a basis for the jury to conclude that he had abandoned the stolen property prior to the threat of force. Therefore, he was entitled to a special instruction on abandonment, and the trial court erred in modifying the special instruction in a manner that was misleading and inconsistent with the law, which does not condition the abandonment defense on the victim's awareness.

Accordingly, I concur in Chief Justice Polston's opinion that explains why Rockmore is entitled to a new trial based on the legally inaccurate special jury instruction given by the trial court. However, I would also go one step further and conclude that, when a defendant asserts abandonment as a defense to robbery and presents evidence in support of this defense, the defendant is entitled to a special jury instruction of the kind approved by the Second District in Peterson that "inform[s] the jury that if the property was abandoned prior to the use of force, under the law the taking and the use of force were not a continuous series [of] acts or events." Peterson, 24 So. 3d at 690. This procedure would thus appropriately leave it up to the jury to resolve the conflicting evidence after being correctly

- 25 -

informed about the law. For all these reasons, I would reverse Rockmore's life sentence for robbery and remand for a new trial where he would have the benefit of a legally accurate special jury instruction on his defense of abandonment.[3]

Application for Review of the Decision of the District Court of Appeal – Certified Direct Conflict of Decisions

Fifth District – Case No. 5D10-1898

(Volusia County)

James S. Purdy, Public Defender, and Kathryn Rollison Radtke, Assistant Public Defender, Daytona Beach, Florida,

for Petitioner

---

3. Rockmore's life sentence was the result of his classification as a Prison Releasee Reoffender (PRR) under section 775.082(9)(a)1., Florida Statutes (2009). This statute requires that for an enumerated felony such as robbery with a firearm that is punishable by life, the defendant must be sentenced to a term of imprisonment for life. § 775.082(9)(a)3., Fla. Stat. (2009).

If Rockmore had been convicted of either of the two lesser-included offenses of petit theft or resisting a merchant, the PRR statute would not have applied. § 775.082(9)(a)1., Fla. Stat. (listing the enumerated offenses for which an offender may be sentenced as a PRR). If Rockmore had instead been charged with and convicted of aggravated assault with a deadly weapon, the PRR statute would have mandated a sentence of only five-years' imprisonment. See § 775.082(9)(a)3., Fla. Stat. (explaining that a third-degree felony is punishable by a term of imprisonment of five years); § 784.021(2), Fla. Stat. (2009) (defining aggravated assault with a deadly weapon as a third-degree felony).

In other words, the difference under the PRR statute between a conviction for robbery with a firearm and a conviction for aggravated assault with a deadly weapon—arguably the most serious alternative offense for which Rockmore could have been charged based on the facts of this case—is the difference between spending five years or the rest of his life in prison.

Pamela Jo Bondi, Attorney General, Tallahassee, Florida, and Pamela Jane Koller, Assistant Attorney General, and Wesley Harold Heidt, Bureau Chief, Daytona Beach, Florida,

for Respondent